James B. McCOY, et al., Plaintiffs,

v.

WHIRLPOOL CORP., et al., Defendants.

Civ.A. No. 02–2064–KHV.

United States District Court,
D. Kansas.

April 16, 2003.

---

Karen A. Eager, Lynn R. Johnson, Shamberg, Johnson & Bergman, Chtd., Kansas City, MO, Dale L. Davis, Springfield, MO, for plaintiffs.

Hal D. Meltzer, Baker, Sterchi, Cowden & Rice, L.L.C., Overland Park, KS, James S. Owens, Jr., Mary A. Palma, Nall & Miller, L.L.P., Atlanta, GA, for defendants.

## *MEMORANDUM AND ORDER*

VRATIL, District Judge.

This matter comes before the Court on *Plaintiffs' Daubert Motion To Exclude Opinion Testimony Of Defendants' Expert Richard Dyer* (Doc. # 105), *Plaintiffs' Daubert Motion To Exclude Opinion Testimony Of Defendants' Rebuttal Expert Richard Dyer* (Doc. # 107), and *Plaintiffs' Daubert Motion To Exclude Testimony And Reports Of Defendants' Expert Roger Owens* (Doc. # 109), all filed March 10, 2003. For reasons stated below, all three motions are overruled.

In various capacities, James B. and Lorray McCoy have filed separate suits for property damage arising out of a fire at their home on February 16, 2000. Plaintiffs allege that the fire originated in a Kenmore "New Generation" dishwasher which they purchased from Sears, Roebuck and Company ("Sears") on August 26, 1996. Plaintiffs claim that Sears and Whirlpool Corporation ("Whirlpool"), which manufactured the dishwasher, are liable under theories of strict liability, negligence, misrepresentation, breach of express and implied warranty, and gross, wanton and reckless conduct. Defendants deny that the fire originated in the dishwasher and argue that it was not defective or unreasonably dangerous.

Defendants have designated various experts to testify about the cause and origin of the fire. Plaintiffs ask the Court to exclude reports and testimony by two of them, Richard A. Dyer and Roger L. Owens.

### *Analysis*

## I. Plaintiffs' Motion To Exclude Testimony Of Richard Dyer

█ Plaintiffs ask the Court to exclude testimony from Richard Dyer, claiming that his reports do not meet the requirements of

Rule 26(a)(2)(B), Fed.R.Civ.P., *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), or Rule 702, Fed.R.Evid. Specifically, plaintiffs claim that Dyer's reports do not establish his qualifications to testify to the opinions expressed, provide the "principles and methods" which he used to form his opinions, explain how he applied the "principles and methods" to the facts of the case, or demonstrate that his opinions will assist the trier of fact. Defendants argue that plaintiffs' motions are technical objections which are untimely because they were not made within 11 days of disclosure, as required by the scheduling order. Defendants also argue that even if plaintiffs' objections are timely, Dyer's reports comply with Rule 26(a)(2)(B) and are admissible.

### A. Timeliness Of Rule 26(a)(2) Objections

Rule 26(a)(2)(B) provides that an expert's report:

> shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

In the scheduling order, Magistrate Judge David J. Waxse ordered that except for objections under Rules 702–705, *Daubert, Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), or similar case law, objections to expert disclosures be served within 11 days after service of the disclosures. Judge Waxse ordered that such objections "be confined to technical objections related to the sufficiency of the written expert disclosures (e.g., whether all of the information required by Rule 26(a)(2)

has been provided, such as lists of prior testimony and publications)." *Scheduling Order* (Doc. # 13) filed June 12, 2002 at 3. On December 6, 2002, Judge Waxse imposed the same requirement with regard to rebuttal experts. *Order* (Doc. # 53) at 2. Any objection not timely asserted was deemed waived unless excused by the Court for good cause shown. *Order* (Doc. # 53) at 2; *Scheduling Order* (Doc. # 13) at 4.

Plaintiffs did not timely object to the sufficiency of the Dyer reports, or timely assert that the reports lacked information required by Rule 26(a)(2). Plaintiffs' motions, which were not filed until March 10, 2003, are insufficient to preserve such objections. Plaintiffs have not shown good cause why the delay should be excused, and any such objections are therefore waived.

Plaintiffs argue that their motions attack the substantive content of the Dyer reports, and not their facial sufficiency under Rule 26(a)(2)(B). The purported distinction, however, is illusory. Plaintiffs' so-called "substantive" challenges are simple variations on one theme: that the reports do not expressly spell out in sufficient detail the facts and scientific methodologies which defendants would be required to introduce into evidence to overcome a *Daubert* challenge at an evidentiary hearing or at trial (*e.g.*, how the expert is qualified to express his stated opinions, how his methodology is generally accepted, how the expert formulated his opinions, etc.). All such objections go to the form of the expert reports, and they stop well short of advancing a colorable argument that Dyer is not qualified as an expert, that his methodologies are not generally accepted,

etc., etc. As a result, plaintiffs' motions clearly implicate Rule 26(a)(2)(B) and—though plaintiffs stop short of invoking sanctions—perhaps Rule 37(c)(1).[1] It is much less clear that plaintiffs' motions implicate *Daubert* in any substantive way.

For these reasons, the Court construes plaintiffs' motions as attacks on the facial sufficiency of the Dyer reports and finds that plaintiffs have waived such objections. For reasons stated below, the Court also finds that plaintiffs' motions are without merit on substantive grounds and that they should be overruled without further hearing.

**B. Rule 702 And *Daubert* Objections**

■ In his report dated July 31, 2001, Dyer concluded that (1) the McCoy fire originated in the basement, under the kitchen; (2) the probable source of ignition was electrical malfunction; (3) incendiary ignition could not be eliminated as a possible cause and should have been investigated until other sources and origins were determined; and (4) fire patterns and other physical evidence eliminated the dishwasher as a potential source of ignition. *Report of Richard A. Dyer* (July 31, 2001) at 27–29, Exhibit 2 in *Memorandum In Support Of Plaintiffs' Daubert Motion To Exclude Opinion Testimony Of Defendants' Expert Richard Dyer* ("*Plaintiffs' Memo To Exclude Dyer*") (Doc. # 106) filed March 10, 2003. In a supplemental report dated January 2, 2003, Dyer also concluded that a fire which involved Jim and Brenda Williams on September 24, 1996—which plaintiffs cite as evidence of a similar fire caused by a Whirlpool dishwasher—in fact originated on the rear deck of the residence

---

1. Plaintiffs have not attempted to demonstrate that they are entitled to exclude Dyer's testimony and reports as a discovery sanction under Rule 37(c)(1). That rule, which would appear to be more suited than *Daubert* to address the facial insufficiency of the expert reports, provides as follows:

   **(c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit.**
   **(1)** A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule

   26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

and not in the dishwasher. *Supplemental Report of Richard A. Dyer* (January 2, 2003) at 2–3, Exhibit 2 in *Memorandum In Support Of Plaintiffs' Daubert Motion To Exclude Opinion Testimony Of Defendants' Rebuttal Expert Richard Dyer* (Doc. # 108) filed March 10, 2003.[2] In support of that opinion, Dyer attached his report of June 7, 1999, regarding his earlier investigation into the cause and origin of the Williams fire.

As noted, plaintiffs claim that Dyer's reports are deficient under *Daubert* and Rule 702 because they do not establish his qualifications to testify to the opinions expressed, provide the "principles and methods" which he used to form his opinions, explain how he applied the "principles and methods," or demonstrate that his opinions will assist the trier of fact.

### 1. Expert Qualifications

Rule 702 provides, in relevant part, that a witness who is qualified by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to scientific, technical or other specialized knowledge. The Court must therefore determine whether Dyer is qualified by "knowledge, skill, experience, training, or education" to render an opinion regarding the cause and origin of the fire at plaintiffs' home. *See* Fed.R.Evid. 702. Dyer's curriculum vitae, which is attached to his reports, outlines extensive experience in fire science and fire investigation. Dryer is a certified fire investigator and instructor, with degrees in fire science and business administration and a graduate degree in public service administration. He has served as a fire fighter, a captain, a training officer, an assistant fire chief and chief deputy state fire marshal. Dyer has taught courses on fire science and

explosion and has occupied leadership positions in professional organizations, including the technical committee of the National Fire Protection Association ("NFPA"). Dyer is the current fire chief of the Kansas City, Missouri Fire Department. His qualifications to render an expert opinion on fire origin and causation cannot reasonably be questioned.

Plaintiffs, however, argue that in 1987, the NFPA developed "the only national standard that defines the requisite knowledge and requisite skills required to meet the job performance standards of a fire investigator." Plaintiffs do not identify a single respect in which Dyer fails to meet the NFPA standard, but insist that because his resume does not mention that standard, the record contains no evidence that he is qualified to render cause and origin opinions.[3] Rule 702, however, does not require that expert witnesses enjoy national accreditation. As we know from the scarecrow in "The Wizard of Oz," a witness who is otherwise qualified is not disqualified for lack of credentials. Dyer's report establishes that he possesses a wealth of specialized knowledge in fire investigation and if he does not meet the NFPA standard—in some respect which plaintiffs have declined to articulate—that matter goes to the credibility and weight of his testimony.

### 2. Reliability Of Dyer's Opinions

■ Plaintiffs complain that Dyer's reports do not contain evidence that he used the methodology set forth in NFPA 921, Guide for Fire and Explosion Investigations ("NFPA 921")—which, the parties agree, represents the national standard with regard to appropriate methodology for investigation by fire science experts.[4] NFPA 921 sets forth a six-step process in which a fire origin

---

**2.** Dyer's supplemental report states that it is based on additional information which he reviewed after preparing his report of March 13, 2001. Plaintiffs do not include the earlier report in their appendix, and it does not appear to be elsewhere in the record.

**3.** NFPA 1033 is a 20-page document which is entitled "Standard for Professional Qualifications for Fire Investigator (1998)."

**4.** *See Plaintiffs' Memo To Exclude Dyer* (Doc. # 106) at 12 (citing *Royal Ins. Co. of Am. v. Joseph Daniel Constr., Inc.,* 208 F.Supp.2d 423, 426 (S.D.N.Y.2002)); *Defendants' Response To Plaintiffs' Daubert Motion To Exclude Opinion Testimony Of Richard Dyer* (Doc. # 124) filed March 24, 2003 at 12.

and cause investigator must (1) recognize the need to determine what caused the fire; (2) define the problem; (3) collect data; (4) analyze the data (inductive reasoning); (5) develop a hypothesis based on that data; and (6) test the hypothesis (deductive reasoning).[5] Plaintiffs claim that Dyer's opinions are unreliable because his reports do not evidence the methodology which he employed in reaching his opinions or state how he applied his methodology to the facts. Specifically, plaintiffs argue that the reports contain no evidence that Dyer used NFPA 921 or any other generally accepted methodology and that defendants have therefore defaulted on their obligation of proving that his opinions are admissible.

As to Dyer's original report, plaintiffs basically complain that it does not explicitly reference NFPA 921 and it therefore must be "mere subjective belief and speculation." Plaintiffs' reply brief takes aim at particular conclusions that (1) the McCoy fire originated underneath the plywood flooring in the kitchen; (2) the fire most probably propagated to the first floor through holes in the flooring; and (3) fire patterns disclose that the fire originated below the plywood floor on the first level. Plaintiffs articulate no respect in which Dyer's investigation and methodology violate NFPA 921, but merely suggest that "careful review and analysis of the entirety" of Dyer's report, as compared to NFPA 921, will reveal that his "bare opinions" are supported only by his "unsupported opinions and/or observations."

Similarly, as to Dyer's supplemental report, plaintiffs challenge three particular opinions regarding the Williams fire: (1) that "the large amount of fire" on the rear deck suggests that the fire originated in the deck area and propagated to the interior of the dwelling; (2) that the fire propagated through the sliding glass doorway in the kitchen and dining areas; and (3) that partial consumption of lower kitchen cabinetry was the result—rather than the point of origin—of the fire. Plaintiffs complain that Dyer's supplemental report does not invoke reliable scientific principle or methods, does not refer to NFPA 921, and must therefore be excluded. At the same time, plaintiffs do not cite a single respect in which Dyer's investigation and methodology are inconsistent with NFPA 921—which is a comprehensive, 148–page guide for fire and explosion investigation.

The Court can make short work of plaintiffs' argument that Dyer's opinions are inadmissible because they do not specifically reference NFPA 921. Rule 26 and Rule 702 impose no such requirement and a technical objection that the reports do not cite NFPA 921 could have been raised—and presumably cured—within 11 days of service. Furthermore, although the Court is greatly handicapped by plaintiffs' lack of assistance in articulating any respect in which Dyer has failed to follow NFPA 921, it has compared his methodologies and analysis with NFPA 921 and concludes that they are good enough to survive plaintiffs' superficial and conclusory attack. The reports do not raise any red flags which suggest that they are based on subjective belief rather than recognized standards.[6] Dyer's investigation and methodolo-

5. *See NFPA 921; Guide for Fire and Explosion Investigations* (1998) at 9–10, Exhibit 4 in *Plaintiffs' Memo To Exclude Dyer* (Doc. # 106).

6. Defense counsel requested assistance from Dyer in determining the cause and origin of the McCoy fire. Dyer defined the problem and inspected the fire scene, evidence which had been removed from the property, evidence from the basement of the McCoy home, and photographs, videotapes, a 9–1–1 audiotape, autopsy reports and reports from the Kansas State fire marshal, the Louisburg Fire Department, the Miami County sheriff's department, and multiple firefighters. Dyer reviewed deposition testimony and plaintiffs' expert reports. He analyzed the data and hypothesized that the fire originated at the basement level of the dwelling, under the kitchen, and that the probable source of ignition was either an electrical malfunction or an incendiary cause. Finally, Dyer relied on deductive reasoning. He recognized the possible sources of ignition and eliminated the dishwasher as the source based on physical marks or fire patterns left by the fire, observations of persons who witnessed the fire or who were aware of the conditions present at the time of the fire, and the physics and chemistry of fire initiation, development and growth.

gy with regard to the Williams fire appear to be similarly grounded in NFPA 921.

■ The Court recognizes that the proponent of expert testimony must show a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation. *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786; *Kumho Tire Co.*, 526 U.S. at 149–50, 119 S.Ct. 1167; *Mitchell v. Gencorp., Inc.*, 165 F.3d 778, 780 (10th Cir.1999). On this record, given plaintiffs' unspecific and conclusory challenge, the Court is satisfied that defendants have discharged that responsibility.

■ It bears emphasizing that plaintiffs have cited no legal authority for the proposition that expert disclosures—standing alone—must meet and exceed all possible lines of attack under *Daubert*. Indeed, while Rule 26(a)(2)(B) requires a complete statement of all opinions to be expressed and the basis and reasons therefor, along with the data or other information considered by the witness in forming the opinions, it does not require that a report recite each minute fact or piece of scientific information that might be elicited on direct examination to establish the admissibility of the expert opinion under *Daubert*. Nor does it require the expert to anticipate every criticism and articulate every nano-detail that might be involved in defending the opinion on cross examination at a *Daubert* hearing. "The purpose of a detailed and complete expert report as contemplated by Rule 26(a) . . . is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de P.R.*, 248 F.3d 29, 35 (1st Cir.2001) (quotation and citation omitted). In part, the purpose of a "detailed and complete" expert report, as contemplated by Rule 26(a), is to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial. *See Klonoski v. Mahlab,* 156 F.3d 255, 269 (1st Cir.1998); *Sylla–Sawdon v. Uniroyal*

*Goodrich Tire Co.,* 47 F.3d 277, 284 (8th Cir.1995); *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir.1992) (disclosure is consonant with federal courts' desire to make trial less a game of blindman's buff and more a fair contest with basic issues and facts disclosed *to the fullest practical extent*) (emphasis added). Failure to include the required information frustrates the purpose of candid and cost-efficient expert discovery—but so would a requirement of *too much* information.

### 3. Helpfulness To The Jury

The touchstone of Rule 702 is helpfulness of the expert testimony, a condition that goes primarily to relevance. *See BioCore, Inc. v. Khosrowshahi,* 183 F.R.D. 695, 699 (D.Kan. 1998) (quoting *Miller v. Heaven,* 922 F.Supp. 495, 501 (D.Kan.1996)). Thus, the Court must determine whether the proffered evidence would be helpful to the trier of fact. *See BioCore,* 183 F.R.D. at 699. In so doing, the Court examines specific subject areas of proposed expert testimony to ascertain whether each is sufficiently tied to the facts of the case so that it will be helpful to the fact finder. *See id.* Any doubts should be resolved in favor of admissibility. *See id.*

Plaintiffs claim that Dyer's testimony will not be helpful to the jury because his opinions are "contradictory." More precisely, plaintiffs profess an inability to reconcile his opinions that (1) the fire originated at the basement level; (2) a "probable" source was electrical malfunction; (3) the fire might be incendiary; and (4) investigators should have determined whether the fire was incendiary. The Court discerns no internal inconsistencies in these opinions. More to the point, any theoretical inconsistency is the proper fuel for cross-examination—not a ground for totally excluding Dyer's testimony. Common sense says that Dyer's opinions are relevant and therefore potentially helpful to the jury if other *Daubert* requirements are satisfied.

### C. Conclusion

The Court finds that on this record, plaintiffs' motions to exclude Dyer's testimony

should be overruled. The Court is also satisfied that an evidentiary hearing on these motions would serve no useful purpose. The Court recognizes that while it has "no discretion regarding the actual *performance* of the gatekeeper function," *Goebel v. Denver & Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir.2000) (citing *Kumho Tire Co.*, 526 U.S. at 158–59, 119 S.Ct. 1167 (Scalia, J., concurring) and *United States v. Velarde*, 214 F.3d 1204, 1209 (10th Cir.2000) (Anderson, J.)), it possesses "latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability." *Kumho Tire Co.*, 526 U.S. at 152, 119 S.Ct. 1167. "The most common method for fulfilling [the gatekeeper function] is a *Daubert* hearing, although such a process is not specifically mandated." *Goebel*, 215 F.3d at 1087 (citations omitted); *Hynes v. Energy W., Inc.*, 211 F.3d 1193, 1203–04 (10th Cir. 2000) (district court held hearing); *see also United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir.1999) (district court granted great latitude in deciding whether to hold formal hearing); *United States v. Call*, 129 F.3d 1402, 1405 (10th Cir.1997) (*Daubert* does not require hearing). The Court may satisfy its gatekeeper role when asked to rule on a motion in limine, on an objection during trial, or on a post-trial motion—so long as it has sufficient evidence to perform "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786.

Dyer's methodology does not involve new scientific theory or new and novel testing methodologies. The "gold standard" for fire investigations is codified in NFPA 921, and its testing methodologies are well known in the fire investigation community and familiar to the courts. On this record, to the extent that different investigators might utilize these methodologies and arrive at contradictory conclusions, the matter involves the credibility of witnesses and the weighing of the evidence—both of which are well suited for resolution by the jury. At trial, the evidence may unfold in such a way as to reveal a genuine *Daubert* issue. If so, the Court will address it at that time. At trial, defendants obviously must lay all necessary foundation for Dyer's opinions. At this point it appears that plaintiffs' objections go more to weight than to admissibility, however, and that the showing required to determine admissibility under *Daubert* is the precise showing that the jury will need to evaluate the credibility and weight to be given Dyer's testimony. Because the necessary foundation for admission must be presented to the jury, a pre-trial *Daubert* hearing would require duplication of effort and needless expense. *Daubert* challenges, like other preliminary questions of admissibility, are governed by Rule 104(c), Fed.R.Evid.—which provides that a hearing outside the presence of the jury shall be conducted "when the interests of justice require." *See Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 603 (10th Cir.1997). The Advisory Committee Notes to Rule 104 state that "[n]ot infrequently the same evidence which is relevant to the issue of establishment of fulfillment of a condition precedent to admissibility is also relevant to weight or credibility, and time is saved by taking foundation proof in the presence of a jury." The interests of justice do not require a hearing on these motions. Accordingly, the hearing previously set for April 29, 2003, is hereby cancelled.

## II. Plaintiffs' Motion To Exclude Testimony And Report Of Roger Owens

Defendants designated Roger Owens, a forensic engineer, to testify about the cause and origin of the McCoy fire. Previously, at Whirlpool's request, Owens had worked on a project to determine the root cause of overheating in door switch assemblies in certain dishwasher models. He was aware of actions which Whirlpool took to re-design the door switch assemblies, as well as the engineering requirements for those changes. Owens reviewed various pleadings, depositions transcripts, expert reports, reports of the Miami County Sheriff, the Louisburg Fire Depart-

ment, the Kansas State Fire Marshal, photographs, discovery responses, videotapes, and scientific articles about failed and/or glowing connections. According to his expert report dated July 29, 2001, nothing in those materials supported the allegation that the dishwasher caused the McCoy fire. To the contrary, Owens concluded that "fire patterns rather clearly point to fire initiation in the vicinity of the floor joists between the basement and the kitchen," and that the routing of the electrical aluminum feeder conductors provided a viable explanation for the fire.

Owens also submitted a rebuttal report dated January 3, 2003, which outlined his disagreement with the opinions expressed by plaintiffs' cause and origin experts James L. Martin, James L. Kuticka, Michael J. Schulz and Byron D. Sherman, Ph.D. Owens based his disagreement on (1) examination of the dishwasher remains; (2) examination of the right front range burner, which was found in the "on" position and confirmed an alternate heat source in the general area of ignition; and (3) flaws in Martin's scientific reasoning and factual premises. Based on those factors, Owens concluded that the McCoy fire did not originate in the dishwasher and that neither a range top fire nor an electrical fault in proximity to wood rafters could be ruled out as the cause.

Plaintiffs claim that Owens' deposition testimony and reports are inadmissible under Rule 702 because defendants have not established that Owens is qualified to render an expert opinion and the record contains no indication that Owens reliably applied the principles and methods to the facts. Further, plaintiffs claims that Owens' reports do not satisfy Rule 26(a)(2)(B), *Daubert* or Rule 702. Defendants respond that Owens is qualified because he holds a masters' degree in electrical engineering, has received fire science training at the college level and has years of experience doing consulting work involving electrical fault and fire investigation evaluation. Defendants also argue that

his opinions are relevant, will help the jury, are based on sufficient facts and data (*i.e.*, scientific testing regarding the root cause of the overheating problem in dishwashers manufactured between 1991 and 1992, and a peer-reviewed scientific article on the results of his testing), and result from reliable principles and methodology to which his reports clearly refer.

## A. Timeliness of Rule 26(a)(2) Objections

Defendants argue that plaintiffs' objections to Owens' reports should be denied because they are technical objections which should have been made within 11 days of disclosure. For reasons previously stated, the Court agrees and finds that plaintiffs' objections are non-substantive objections under Rule 26(a)(2)(B) which plaintiffs have waived by failing to timely assert them.

## B. Rule 702 and *Daubert* Objections

As noted, the Court performs a two-step analysis to determine whether Owens' opinions are admissible. First, under Rule 702, the Court must determine whether he is qualified by "knowledge, skill, experience, training, or education" to render an opinion. Second, the Court must determine whether Owens' opinions are "reliable" under the principles set forth under *Daubert* and *Kumho Tire Co.*

■ Owens' curriculum vitae, which is attached to his reports, outlines his extensive experience as a forensic engineer and demonstrates that he is qualified to render an expert opinion whether the McCoy dishwasher caused the fire, whether dishwasher remains show an electrical failure, whether a dishwasher can overheat and cause a fire when it is not operating, and whether the opinions of plaintiffs' electrical engineering experts are scientifically valid.[7] While plaintiffs complain that Owens' reports only ex-

---

7. Owens, a registered professional engineer, is a board certified diplomat in forensic engineering, and has a masters' degree in electrical engineer-

ing and more than 43 years of professional engineering experience. He primarily provides consultation in the areas of electrical and electrical

plain his qualifications "in the abstract" and do not tie those qualifications to specific opinions, they cite no authority for the proposition that Rule 26(a)(2)(B) requires such explicit ties. Owens' reports are not deficient for failing to establish his qualifications to express an opinion regarding the matters covered in the reports.

As with their attack on Dyer's investigation and methodology, plaintiffs make vague and conclusory challenges to Owens' reports. Plaintiffs complain that Owens ignores relevant facts, for example, without directing the Court's attention to any relevant fact which he ignored. Plaintiffs complain that Owens' reports do not identify what generally accepted principles and methodology he relied upon, but they do not claim that he relied upon unaccepted principles and methodology. In short, plaintiffs have not articulated a legitimate scientific dispute as to Owens' investigation and methodology. In addition, as noted above, they appear to labor under a misapprehension regarding the proper function of an expert report under Rule 26(a)(2)(B).

■ To determine on the merits whether Owens used reliable methodology, the Court considers (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community. *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786. These factors are not a definitive checklist or test, and the Court's inquiry into reliability must be tied to the facts of the particular case. *Kumho Tire Co.*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238. Expert opinions may be based on the expert's education, training and experience, combined with reliance on reports, depositions or other information related to the particular circumstances, but the expert must also explain factually why and how he reached those conclusions. *Hilt v. SFC Inc.*, 170 F.R.D. 182, 185 (D.Kan.1997).

In this case, Owens has apparently provided a complete statement of all opinions which he will express, and his reports "provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions." *Id.* At least briefly, they explain factually why and how Owens has reached those opinions. *See id.* Owens attached to his report a list of items reviewed and relied on, his curriculum vitae (which includes a list of publications which he authored), and a specific trial and deposition summary. These items, along with his explanations, set forth the basis and reasons for his opinions in a manner which is sufficient to defeat plaintiffs' ill-conceived objections. Owens' testimony will be helpful to the jury—which can sort out any perceived inconsistencies. For reasons explained above, with regard to plaintiffs' motions to exclude the Dyer testimony, the Court finds that a further hearing on plaintiffs' motion would be an imprudent use of judicial resources and unnecessarily increase the parties' litigation costs. The hearing, previously set for April 29, 2003, is hereby cancelled and plaintiffs' motion is overruled.

**IT IS THEREFORE ORDERED** that *Plaintiffs' Daubert Motion To Exclude Opinion Testimony Of Defendants' Expert Richard Dyer* (Doc. # 105), *Plaintiffs' Daubert Motion To Exclude Opinion Testimony Of Defendants' Rebuttal Expert Richard Dyer* (Doc. # 107), and *Plaintiffs' Daubert Motion To Exclude Testimony And Reports Of Defendants' Expert Roger Owens* (Doc. # 109), all filed March 10, 2003, be and hereby are **OVERRULED.**

---

failure analysis, electric-mechanical product analyses, shipboard and marine machinery and equipment, electrical personal injury and electrocution, and he has extensive experience in safety and hazard analysis ofelectrical systems, electrical and mechanical industrial systems, control systems and marine engineering.