**SINGLE CHIP SYSTEMS CORPO-RATION and Neology, S. de R.L. de C.V., Plaintiffs,**

v.

**INTERMEC IP CORP., Transcore, LP and Transcore Holdings, Inc., Defendants.**

**Transcore, LP, Counter-claimant,**

v.

**Single Chip Systems Corporation and Neology, S. de R.L. de C.V., Counter-defendants.**

**No. CIV. 04CV1517JAH(CAB).**

United States District Court, S.D. California.

June 29, 2007.

Daniel J. O'Connor, Baker and McKenzie, Chicago, IL, Howard N. Wisnia, Cynthia A. Freeland, Dongkwan James Pak, James P. Conley, Baker and McKenzie, San Diego, CA, for Plaintiffs/Counter–defendants.

Bruce R. Zisser, Quinn Emanuel Urquhart Oliver and Hedges, William J. Robinson, Stephen M. Lobbin, Foley and Lardner, Los Angeles, CA, Carson P. Veach, Jacob D. Koering, Freeborn and Peters, Chicago, IL, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING TRANSCORE'S MOTION TO STRIKE THE GOLDBERG DECLARATION

HOUSTON, District Judge.

### *INTRODUCTION*

Now pending before this Court are Plaintiffs Single Chip Systems Corp. and Neology, S. de R.L. de C.V.'s (collectively "Plaintiffs") renewed motion for summary judgment of invalidity under 35 U.S.C. § 103, and Defendants TransCore LP and TransCore Holdings, Inc.'s (collective "TransCore") motion to strike the declaration of Jack Goldberg. Doc. Nos. 497 and 499. Oral argument was heard on June 28, 2007, with appearances by Howard N. Wisnia, Daniel O'Connor, James Conley and James Pak for Plaintiffs and William J. Robinson and Grant Kinsel for Trans-Core. This Court, after hearing the oral argument of counsel denied TransCore's motion to strike the Goldberg declaration, and took Plaintiffs' motion for summary judgment under submission.

On June 29, 2007, this Court held a telephonic conference with the parties, with Howard Wisnia appearing for Plaintiffs, and William Robinson and Grant Kinsel appearing on behalf of TransCore. This Court at the telephonic conference issued an oral ruling affirming its denial of

TransCore's motion to strike, and granting in part and denying in part Plaintiffs' motion for summary judgment under 35 U.S.C. § 103. The Court now issues its written Order GRANTING IN PART AND DENYING IN PART Plaintiffs' motion for summary judgment of invalidity under 35 U.S.C. § 103, and DENYING TransCore's motion to strike the declaration of Jack Goldberg. To the extent that this Court's oral ruling of June 28, 2007, and June 29, 2007 does not conflict with this Order, it is hereby incorporated by reference.

## BACKGROUND

### 1. Procedural History

Plaintiffs filed the instant complaint on July 27, 2004, seeking declaratory relief from this Court regarding three of Defendant Intermec IP Corporations's patents (U.S. Patent Nos. 5,030,807; 5,528,222; and 6,121,880). Defendant Intermec moved to dismiss claims two and three of the complaint, or U.S. Patent Nos. 5,528,-222 and 6,121,880. Doc. No. 37. This Court granted Defendant Intermec's motion, over the objection of TransCore, leaving only U.S. Patent No. 5,030,807 (the "'807 patent") in this declaratory relief action. See Doc. Nos. 43 and 61.

In October 2005, TransCore inquired with this Court whether or not an early Markman hearing would be entertained. The Court indicated that it would. The parties met and conferred, and stipulated to a schedule controlling the submission of Markman hearing briefs and related expert depositions. See Doc. No. 103. On November 3, 2005, this Court issued an Order adopting the parties' stipulation with revisions. Id.

On December 1, 2005, the parties filed a joint claim construction chart and pre-hearing brief regarding the Markman proceedings. Doc. No. 129. Plaintiffs and TransCore filed their Opening Markman briefs on November 23, 2005 and December 5, 2005, respectively. See Doc. Nos. 121 and 132. Plaintiffs and TransCore filed their Opposition briefs on December 7, 2005. See Doc. Nos. 134 and 136. Plaintiffs and TransCore filed their Reply briefs on December 14, 2005. See Doc. Nos. 143 and 145. A tutorial hearing was held on December 19, 2005, and a Markman hearing on January 9, 2006. Doc. Nos. 148 and 154. TransCore subsequently filed a Citation of New Authority after the Markman hearing, which Plaintiffs opposed. Doc. Nos. 155 and 163. On March 22, 2006, this Court ordered supplemental briefing from the parties. See Doc. No. 197. Both parties filed supplemental briefs on March 30, 2006. This Court issued its Markman Order on April 14, 2006.

On February 22, 2006, Plaintiffs filed their motion for summary judgment under 35 U.S.C. § 287(a), seeking a judgment that TransCore is barred from recovering any damages arising prior to providing notice of infringement. Doc. No. 178. TransCore filed an opposition on April 18, 2006. Doc. No. 212. Plaintiffs filed a reply under seal on April 20, 2006. Doc. No. 227. The matter was taken under submission by this Court pursuant to Civ.LR 7.1(d.1). See Doc. No. 221. On July 6, 2006, this Court denied Plaintiff's summary judgment under 35 U.S.C. § 287(a). Doc. No. 327.

On May 2, 2006, Plaintiffs filed a motion to modify the Court's claim construction order. Doc. No. 231. TransCore filed an opposition on May 18, 2006. Doc. No. 246. On May 24, 2006, Plaintiffs filed a reply. Doc. No. 270. The matter was taken under submission by this Court pursuant to Civ.LR 7.1(d.1). See Doc. No. 273. On June 8, 2006, TransCore filed a request for leave to file a surreply in opposition to Plaintiffs' motion to modify the Court's

claim construction order. Doc. No. 280. This Court granted Plaintiff's request. Doc. No. 279. On August 7, 2006, this Court issued an Order clarifying the Court's claim construction order, and denying Plaintiff's motion to modify the claim construction. Doc. No. 344.

On May 8, 2006, Plaintiffs filed a motion to strike TransCore's amended counterclaim. Doc. No. 236. Plaintiff Neology, Inc. filed a motion to dismiss TransCore's amended counterclaim. TransCore filed a combined opposition to Plaintiffs' motion to strike and motion to dismiss on June 12, 2006. Doc. No. 284. On June 15, 2006, Plaintiffs filed a reply in their motion to strike. Doc. No. 293. Plaintiff Neology, Inc. filed a reply in its motion to dismiss on June 15, 2006. Doc. No. 295. The matter was taken under submission by this Court pursuant to Civ.LR 7.1(d.1). *See* Doc. No. 297. On August 4, 2006, this Court granted Plaintiffs' motion to strike TransCore's amended counterclaim and addition of new party. Doc. No. 343.

On May 22, 2006, Plaintiffs filed the instant motion for summary judgment for invalidity under 35 U.S.C. § 112. Doc. No. 250. Plaintiffs also filed a motion for summary judgment of invalidity under 35 U.S.C. §§ 102 and 103. Doc. No. 258. On June 20, 2006, TransCore filed under seal a combined opposition to Plaintiffs' motion for summary judgment of invalidity. Doc. No. 301. Plaintiffs filed replies in their motion for summary judgment of invalidity on June 26, 2006. *See* Doc. Nos. 309 and 311. This Court denied Plaintiffs' motion for summary judgment of invalidity on November 6, 2006. Doc. No. 366.

On May 22, 2006, TransCore filed a motion for summary judgment of patent infringement. Doc. No. 259. Plaintiff Neology, Inc. filed an opposition on June 12, 2006. Doc. No. 287. Plaintiffs filed an opposition under seal on June 12, 2006. On June 26, 2006, TransCore filed a reply under seal. Doc. No. 325. This Court denied TransCore's motion for summary judgment of infringement on December 5, 2006. Doc. No. 367.

On May 22, 2006, Plaintiffs filed a motion for summary judgment of non-infringement and for sanctions under Fed. R.Civ.P. 37. Doc. No. 254. TransCore filed an opposition under seal on June 20, 2006. Doc. No. 300. Plaintiffs filed a reply under seal on June 26, 2006. Doc. No. 320. This Court granted in part and denied in part Plaintiffs' motion for summary judgment of non-infringement on December 5, 2006. Doc. No. 367.

On August 11, 2006, TransCore filed a motion for leave to file a first amended counterclaim. Doc. No. 345. Plaintiffs filed an opposition on September 5, 2006. Doc. No. 364. TransCore filed a reply on September 7, 2006. Doc. No. 359. On January 24, 2007, this Court denied TransCore's motion to file a first amended counterclaim. Doc. No. 370. TransCore thereafter filed a new case against Neology, Inc., *see* Case No. 07CV0256, asserting patent infringement under 35 U.S.C. §§ 271(a)-(c) and (f), and filed a notice of related case with this Court. Doc. No. 371. TransCore filed a motion to consolidate the '256 case with the instant matter on February 20, 2007. The hearing on TransCores' motion to consolidate, and Defendant Neology, Inc.'s motion to dismiss the '256 case, was set for April 26, 2007. Doc. No. 392. This Court subsequently denied TransCore's motion to consolidate on May 25, 2007. Doc. No. 496.

On February 22, 2007, TransCore filed an *ex parte* application to request that this Court provide findings of fact under Fed. R.Civ.P. 56(d). Doc. No. 383. Plaintiffs filed an opposition to TransCore's *ex parte* application on February 23, 2007. Doc. No. 385. On March 2, 2007, this Court denied TransCore's *ex parte* application

without prejudice, stating that this Court's Local Rules require the parties to provide in the "simplification of triable issues," including the identification of undisputed facts prior to trial. Doc. No. 390. The Court allowed Defendants to renew their Rule 56(d) request after completion of the relevant pretrial proceedings. *Id.*

On March 22, 2007, this Court held the pretrial conference, and set a briefing schedule for motions in limine and motion regarding the proposed findings of fact with the Court. Doc. No. 394. On April 9, 2007, TransCore filed seven separate motions in limine. Doc. Nos. 401–405; 425–426 (filed under seal). Plaintiffs filed oppositions to TransCore's motions in limine on April 16, 2007. Doc. Nos. 456–460; 466–468 (filed under seal).

On April 9, 2007, Plaintiffs filed fifteen separate motions in limine. Doc. Nos. 407–417; 430–434 (filed under seal). TransCore filed oppositions to Plaintiff's motions in limine on April 16, 2007. Doc. No. 442; 446–455; 471–474 (filed under seal). Defendant Intermec IP also filed an opposition to Plaintiffs' motion in limine no. 15 on April 16, 2007. Doc. No. 444.

On April 13, 2007, both parties filed proposed findings of fact with this Court. Doc. Nos. 440–441. The parties filed responses to the proposed findings of fact on April 20, 2007. Doc. Nos. 477–478.

On April 24, 2007, Plaintiffs filed an *ex parte* application seeking leave to file and expedite a hearing on a request for reconsideration. Doc. No. 479. TransCore filed an opposition to Plaintiffs *ex parte* request, as well as the request for reconsideration on April 26, 2007. Doc. No. 481. TransCore also sought sanctions for Plaintiffs' motion for reconsideration. *Id.* On May 4, 2007, this Court held a hearing on an unrelated matter, and discussed Plaintiffs' filing of its request for reconsideration. Doc. No. 490. At the hearing, the Court granted Plaintiffs' *ex parte* application for leave to file their request for reconsideration, and set a deadline for submission of Plaintiffs' reply, and took the matter under submission. *Id.;* Doc. No. 493. On May 9, 2007, Plaintiffs filed a reply. Doc. No. 488.

At the motions in limine hearing on May 10, 2007, Plaintiffs made an oral motion to renew their motion for summary judgment of invalidity of the '807 Patent as obvious under the Supreme Court's recent decision in *KSR Int'l Co. v. Teleflex, Inc.,* —— U.S. ——, 127 S.Ct. 1727, 167 L.Ed.2d 705 (April 30, 2007). Plaintiffs also requested a delay of the trial hearing date pending this Court's decision on Plaintiffs' renewed motion for summary judgment. TransCore objected to Plaintiffs' motion. This Court granted Plaintiffs' motion, and set a scheduling order for limited discovery on this narrow issue of obviousness, and set a hearing date for June 22, 2007. Doc. No. 491 and 496.

On May 29, 2007, Plaintiffs filed a motion for summary judgment re: invalidity of the '807 Patent in view of *KSR.* Doc. No. 497. TransCore filed an opposition on June 7, 2007. Doc. No. 507 (filed under seal). Plaintiffs filed a reply on June 8, 2007. Doc. No. 510.

On June 1, 2007, TransCore filed an *ex parte* motion to strike Goldberg's declaration. Doc. No. 499. On June 4, 2007, this Court construed TransCore's *ex parte* motion as a motion to strike, allowing Plaintiffs to file and serve an opposition to the motion, and no reply by TransCore. Doc. No. 504. Plaintiffs filed a response in opposition to TransCore's motion to strike on June 8, 2007. Doc. No. 510.

## 2. Factual Background

This case concerns U.S. Patent Number 5,030,807 ("the '807 Patent"), entitled "System for Reading and Writing Data from and into Remote Tags." The named inven-

tors on the '807 Patent are Jeremy A. Landt and Alfred R. Koelle. The '807 Patent, which was filed with the U.S. Patent and Trademark Office on January 16, 1990, was issued on July 9, 1991. Defendant Intermec IP Corp is the assignee of the '807 Patent. Defendants TransCore, L.P. and TransCore Holdings, Inc., licensed the '327 Patent from Defendant Intermec, Corp. *See* Cplt. at 4.

The '807 Patent discloses systems and devices for identifying, reading, relaying and writing information into moveable objects. Moveable objects employing these systems and devices include the tracking of retail items, electronic automated tollbooths, inventory control during shipment and container tracking. The system employs an interrogator which sends a radio frequency ("RF") signal to a moveable object. The moveable object is capable of relaying information stored in the object by backscatter modulating information stored in the moveable object onto the RF signal. The moveable object transmits this information back to the interrogator, which can store the information, as well as write information into the object. The interrogator is capable of writing information into a moveable object only if it recognizes the moveable object, and has information to write into the moveable object.

## DISCUSSION

### I. Legal Standard

#### A. *Summary Judgment*

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case.

*See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. 2548. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). "The district court may limit its review to the documents submitted for purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1030 (9th Cir.2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (citing *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets the initial burden, the nonmoving party cannot de-

feat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson*, 477 U.S. at 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)) (internal quotations omitted).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## B. *Obviousness*

35 U.S.C. § 103 states in relevant part that:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

35 U.S.C. § 103(a) (West 2007). Thus, the statutory standard for a determination of obviousness provides that a claimed invention is unpatentable if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103; *see also Graham v. John Deere Co.*, 383 U.S. 1, 13, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Obviousness under 35 U.S.C. § 103 is a two-step inquiry. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed.Cir.2003); *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed.Cir.1998). The first step is a proper construction of the claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed.Cir.1995). The second step in the analysis requires a comparison of the properly construed claim to the prior art. *Oakley*, 316 F.3d at 1339.

Although a finding of obviousness is a matter of law, the analysis rests on four factual inquiries: 1) the scope and content of the prior art; 2) the differences between the claims and the prior art; 3) the level of ordinary skill in the pertinent art; and 4) secondary considerations, if any, of nonobviousness. *B.F. Goodrich Co. v. Aircraft Braking Systems, Corp.*, 72 F.3d 1577, 1582 (Fed.Cir.1996). Secondary considerations of nonobviousness include such factors as commercial success, satisfaction of a long-felt need, prior failure of others, and copying of the invention by others. *Id.; Graham*, 383 U.S. at 17, 86 S.Ct. 684. A grant of a motion for summary judgment based on obviousness is therefore only appropriate where "the factual inquiries into obviousness present no genuine issue of material facts," and invalidity can be shown by clear and convincing evidence. *Ryko Mgf. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 718 (Fed.Cir. 1991).

## II. Analysis

### A. *Motion to Strike*

■ TransCore moves to strike Goldberg's expert declaration because the declaration allegedly contains information and opinions not originally contained in Goldberg's second supplemental expert report. Doc. No. 499 at 3–4 and 9–10. Plaintiffs in response deny that Goldberg's expert declaration goes beyond his second supplemental expert report. Doc. No. 510 at 2. Plaintiffs instead point out Trans-Core's mistaken belief that "unless the Goldberg declaration contains the identical words or phrases found in the Goldberg report, what is in the declaration is new or outside the scope of the report." *Id.* at 1. Plaintiffs also contend that TransCore uses the majority of its motion to discuss substantive arguments directed towards the motion for summary judgment, and therefore takes an impermissible, and sanctionable, "additional bite at the apple." *Id.* The Court finds the context of TransCore's motion to strike does not support a motion for sanctions.[1]

■ Rule 26(a)(2)(B) states in relevant part that:

[A] witness who is retained to . . . provide expert testimony in the case . . . be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and]

any exhibits to be used as a summary of or support for the opinions . . . .

Rule 26(a)(2)(B), therefore, requires disclosure of information that an expert would rely on and testify to, including in a declaration supporting a pretrial motion. *See Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 663 (6th Cir.2005) (excluding expert affidavit on summary judgment where report and affidavit "substantially different"), citing to *Crawford–El v. Britton*, 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."). Thus, a court would be within its discretionary authority to omit either portions of or the entire expert opinion if a party breaches the disclosure requirements under Rule 26.

■ TransCore asserts that Goldberg's declaration should be stricken because it goes beyond his second supplemental expert report. TransCore lists 25 separate instances of subject matter that was discussed in Goldberg's declaration that were allegedly not included in his supplemental expert report. *See* Doc. No. 499 at 9–10. Plaintiffs rebut that the 25 references were not disclosed by Goldberg, and contend instead that the "prior declarations included, either explicitly or implicitly, every one of the twenty-five (25) alleged new matters TransCore has alleged as missing in his Second Supplemental Expert Report (SSR)." Doc. No. 510 at 3. Although Rule 26(a)(2)(B) requires that experts disclose a "complete statement of all opinions to be

---

1. Although TransCore's motion appears to discuss issues outside of, or irrelevant to, its motion to strike, this Court finds that such discussion is minimal and does not rise to the level of sanctionable activity. For example, from page 4 through 8 of the motion to strike, TransCore discusses why Plaintiffs' expert allegedly fails to discuss the "correct" factual inquiries discussed in *KSR*. However,

the majority of the motion to strike discusses the alleged differences between Goldberg's supplemental expert report and declaration, including where Goldberg's supplemental expert report, declaration and deposition testimony differ. The Court, accordingly, does not find TransCore's filing sanctionable as an impermissible "additional bite at the apple."

expressed and the basis and reasons therefor" in their expert report, an expert is not required to "recite each minute fact or piece of scientific information that might be elicited on direct examination to establish the admissibility of the expert opinion under *Daubert.*" *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646, 652 (D.Kan.2003). "The purpose of a detailed and complete report as contemplated by Rule 26(a) ... is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de P.R.*, 248 F.3d 29, 35 (1st Cir.2001). Accordingly, the Court here must determine whether the references and opinions complained of are sufficiently disclosed in Goldberg's expert reports under Rule 26(a)(2)(B).

In the instant matter, a comparison of Goldberg's declaration and second supplemental expert report, as well as his 2006 expert report, does not reveal that Trans-Core would be "ambushed" by Goldberg's submissions. Plaintiffs supplied in every instance, the location and reference of each document objected to by TransCore, citing to either Goldberg's prior expert report, filed in 2006, or in his second supplemental expert report. A comparison of the opinions complained of by TransCore in Goldberg's second declaration in support of invalidity reveals that the majority of the opinions were given extensive discussion in his declaration. *See, e.g.,* Conley Decl., Exh. A, re: discussions of upgrading technology (Goldberg ¶¶ 24, 27, 34–35, 55, 58 and 60). Accordingly, with respect to opinions provided by Goldberg in his supplemental declaration, there is sufficient

support in his expert reports to satisfy the requirements under Rule 26(a)(2)(B).

With respect to several references, however, Plaintiffs appear to give only cursory explanations as to the location of these references. For example, in its response regarding ¶ 26 and footnote 10 [2] of the Goldberg declaration and the August 28, 1986 memorandum by Alfred Koelle ("Koelle '86 memorandum"), Plaintiffs point to deposition testimony by inventor Landt that is listed in Goldberg's prior 2006 deposition, and state that the Koelle '86 memorandum was presented as exhibit 94 in the deposition. Conley Decl., Exh. A at 4. Plaintiffs' explanation, therefore, amounts to a protracted and fairly distant disclosure in Goldberg's declaration. Although such disclosure may not rise to the level required in Rule 26(a)(2)(B), there is no prejudice to Trans-Core here because the Court has not relied on this reference in its analysis. *See* Fed. R.Civ.P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence ... on a motion ... information not so disclosed."); *Dukes v. Wal–Mart, Inc.*, 222 F.R.D. 189, 195–96 (N.D.Cal.2004). Similarly, TransCore's complaint of the Landt Article "Shrouds of Time" also brings no prejudice because this Court does not rely on it in its analysis. *See* Doc. No. 499 at 9, referring to Goldberg Decl. at ¶ 10.

Finally, TransCore's opposition to the inclusion of Landt's deposition testimony regarding PREMID system problems as not disclosed by Goldberg is rejected. *See* Doc. No. 499 at 9. Goldberg in his 2006

---

**2.** TransCore cites to footnote 1, not 10, in their motion to strike. Footnote 1, however, does not relate to any discussion of the "RFID standard proposed by Henoch" that was referred to in their pleading. *See* Doc. No. 499

at 9. The Court, therefore, agrees with Plaintiffs that TransCore refers to footnote 10, not 1, of the Goldberg Declaration. *See* Conley Decl. at Exh. A.

expert report explicitly listed Landt's deposition testimony as evidence in his expert report. *See* Conley Decl., Exh. C at 57. Moreover, Landt's testimony regarding known problems of the PREMID system is not Goldberg's opinion, but rather a factual statement of Landt's opinion. Such facts were contained and disclosed in Goldberg's expert report. Accordingly, this Court rejects TransCore's opposition to the use of Landt's deposition testimony in the Goldberg declaration.

Thus, for the reasons stated above, the Court DENIES TransCore's motion to strike the Goldberg declaration in its entirety.

## B. *Obviousness Analysis*

### 1. *KSR*

In *KSR Int'l Co. v. Teleflex, Inc.*, —— U.S. ——, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007), the Supreme Court rejected the "teaching, suggestion, motivation" test ("TSM") for obviousness under 35 U.S.C. § 103 promulgated by the Federal Circuit Court of Appeals. More specifically, the Court rejected the "rigidity" of the TSM test as applied by the Federal Circuit. *Id.* at 1741. Although the Court recognized the importance of guarding against the use of hindsight to find obviousness, the Court found no reason to use such a restricting test for the primary reason of preventing hindsight bias. *Id.* at 1743.

The Court, quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), set forth several initial factors for performing an objective analysis of obviousness:

> "Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented."

*KSR*, 127 S.Ct. at 1734, quoting *Graham*, 383 U.S. at 17–18, 86 S.Ct. 684. The Court expressly noted that the *Graham* factors are still controlling in an obviousness analysis. *Id.* ("While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls."). Accordingly, this Court must also, at a minimum, consider each *Graham* factor in deciding whether a patent is rendered obviousness by the prior art.

The *KSR* Court also commented specifically on patent validity analysis for combination patents, or patents "based on the combination of elements found in the prior art." 127 S.Ct. at 1739. The Court looked at combination patents " 'which only unites old elements with no change in their respective functions ... obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men.' " *Id.*, quoting *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950). The Court concluded that the "combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.*

The Court, in continuing its discussion on combination patents, also noted the influence of market forces for improvement of the prior art:

> When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can

implement a predictable variation, § 103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill. 127 S.Ct. at 1740. The Court admonished that a reviewing court "must ask whether the improvement is more than the predictable use of prior art elements according to their established functions." *Id.*

The Court recognized, however, that certain subject matter may be more difficult to analyze than others. In some cases, "the claimed subject matter may involve more than the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement." 127 S.Ct. at 1740. The Court gave guidance to this situation, stating that for complex subject matters, a reviewing court may need "to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *Id.* at 1740–41.

The Court made note of several "flaws" by the court of appeals, including the narrowness of concentrating on the motivation of the patentee. 127 S.Ct. at 1742. "The question is not whether the combination was obvious to the patentee but whether combination was obvious to a person with ordinary skill in the art." *Id.* The Court also found error with the court of appeals' assumption that "a person of ordinary skill attempting to solve a problem will be led only to those elements of prior art designed to solve the same problem." *Id.* The Court, instead, advocated the use of common sense, where "familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.*

The Court also faulted the Federal Circuit's conclusion that an "obvious to try" standard is inappropriate. Instead, the Court cited to "design need[s] or market pressure to solve a problem" that could drive a person of ordinary skill "to pursue the known options within his or her technical grasp." 127 S.Ct. at 1742. "If this leads to anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." *Id.* Finally, the Court faulted the court of appeals for finding a genuine issue of material fact at summary judgment because of conflicting declarations by experts.

> To the extent the [district] court understood the *Graham* approach to exclude the possibility of summary judgment when an expert provides a conclusory affidavit addressing the question of obviousness, it misunderstood the role expert testimony plays in the analysis. In considering summary judgment on that question the district court can and should taken into account expert testimony, which may resolve or keep open certain questions of fact. That is not the end of the issue, however. The ultimate judgment of obviousness is a legal determination.

127 S.Ct. at 1745. Accordingly, the Court found that a reviewing court could find obviousness where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors...." *Id.* at 1745–46.

*Parties' Interpretation of KSR*

As an initial matter, although the parties agree that *KSR* expressly rejected the rigid application of the TSM test in an obviousness analysis, they disagree on the factors to be applied as a result of *KSR*. Plaintiffs assert that *KSR* advocates a " 'an expansive and flexible approach,' " recognizing the importance of market factors, design incentives, a motivation to upgrade and known problems to one of ordinary skill in the art to determine if a patent " 'is likely the product not of innovation but of ordinary skill and common sense.' " Doc. No. 498 at 1–2. TransCore rebuts Plaintiffs' interpretation, asserting instead that *KSR* requires a more fact intensive analysis grounded first in the findings of *Graham*. Opp. at 1. TransCore insists that *KSR* requires the Court to consider 21 separate factors in an obviousness analysis: 1) whether a patent is a combination or non-combination patent; 2) if a combination patent, whether the combination is the predictable use of known elements; 3) whether design incentives prompted variations of an invention in a particular field or a different one; 4) whether market forces prompted variations of an invention in a particular field or a different one; 5) the interrelated teachings of multiple patents; 6) the effects of demands known to the design community; 7) the effects of demands in the marketplace; 8) the market demand effect on driving design trends; 9) the scientific literature effect on driving design trends; 10) the background knowledge possessed by a person having ordinary skill in the art; 11) the inferences that a person of ordinary skill in the art would employ; 12) the creative steps that a person of ordinary skill in the art would employ; 13) whether any need or problem known in the field of endeavor at the time of the invention and addressed by the patent provided a reason for combining the elements in the manner claimed; 14) whether there was a design need to solve a problem; 15) whether there was market pressure to solve a problem; 16) whether, if there were a finite number of identified, predictable solutions to such a design need or market pressure to solve a problem, such solutions were within the technical grasp of a person of ordinary skill in the art; 17) whether, if such solutions were within the technical grasp of a person of ordinary skill in the art, such person had good reason to pursue such known options; 18) whether there is a 'teaching suggestion or motivation to combine' prior art; 19) whether any conclusions reached regarding obviousness are the improper product of hindsight bias and distortion; 20) whether a prior art teaches away from combining certain known elements; and 21) whether any secondary considerations of non-obviousness are present. TransCore specifically faults Plaintiffs' analysis because Plaintiffs fail to apply all of the factors.

The parties, therefore, differ on the complexity of the obviousness analysis employed by *KSR*. To the extent that TransCore invites this Court to employ a rigid 21–factor obviousness analysis, the Court declines the invitation. The Court in *KSR* began their analysis "by rejecting the rigid approach of the Court of Appeals," and instead recognized that past Supreme Court precedent "set forth an expansive and flexible approach" that was inconsistent with the Federal Circuit's TSM test, and trial courts should employ a "common sense" approach that takes into account additional factors, including market forces and design incentives. 127 S.Ct. at 1739, 1742. Accordingly, this Court, rejects that an obviousness analysis requires the rigid application of a 21–factor test as advocated by TransCore, and instead will apply a flexible and expansive approach as mandated by *KSR*.

## 2. Combination Patent

■ TransCore also contends that *KSR* does not apply here because the '807 Patent is not a combination patent. Opp. at 6. O'Connor contends that the '807 Patent is not a combination patent because the asserted claims use new and unique elements. O'Connor Decl. O'Connor asserts that the third element of Claim 1, in particular, is not found in the prior art. *Id.* Plaintiffs in reply refute O'Connor's assertion, stating that O'Connor in previous testimony refers to the various elements of the prior art references, and recognized the element of "selective transmission" as being incorporated by the Denne '202 reference. *See* Exh. 26.

A "non-combination" patent is a rarity in any field or art. As observed by almost every court and circuit, including the Supreme Court, "virtually every claimed invention is a combination of old elements, and ... virtually every patent can be described as a 'combination patent.'" *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1566 (Fed.Cir.1983). The common thread between cases that define a "combination patent" revolves around availability in the prior art of each element of a claim. *See KSR*, 127 S.Ct. at 1739 ("[C]ombination patents unite[ ] old elements"); *Great A & P Tea Co. v. Supermarket Equip. Co.*, 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950); *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 280–81, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *M–C Inds. v. Precision Dynamics Corp.*, 634 F.2d 1211, 1213 (9th Cir.1980). "Whether a patent is a combination patent depends ... on whether each element in the invention is old in the prior art." *Medtronic*, 721 F.2d at 1566.

A review of the record supports that the '807 Patent is a combination patent. As discussed in its Markman Order, the asserted claims of the '807 Patent discloses distinct subcomponents: the interrogator and remote object. *See* Doc. No. 211 at 2. Within each subcomponent clause, the claim language recites to required functions of the interrogator and remote object. For example, the remote object in Claim 1 recites functions of: 1) being "capable, upon receipt of [an] RF signal, backscatter modulating said RF signal;" and 2) "returning a backscatter-modulated signal to [an] interrogator, said backscatter-modulated signal being modulated with data indicating the identity and other data stored in said remote object." '807 Patent at 9:45–50. Similarly, Claim 1 recites that the interrogator: 1) sends an RF signal to a remote object, the data "including data to be received and stored by the remote object;" 2) is capable of "recogniz[ing] said identity and other data stored in said remote object;" 3) is capable of "transmit[ting] data to said remote object only if said interrogator has data to be transmitted to that identified remote object;" and 4) "whereby data may be selectively transmitted to and received and stored by a remote object only after such remote object has been identified as the correct remote object to receive such data." *Id.* at 9:42–44 and 9:51–60. Each identifiable function, accordingly, corresponds to separate elements, the combination of which forms the claimed invention as recited in claims 1 and 4–6.

Viewing the separate elements identified in the claims, this Court finds that there is no genuine issue of material fact that each element is found in the prior art. First, as this Court has already found in its first summary judgment Order of invalidity, and as discussed in the instant motion, the prior art references of Sterzer '82, Sterzer '880 patent and Henoch '82 references each possess separate elements of the claims recited above. Moreover, Plaintiff presents convincing evidence of TransCore's expert, O'Connor, agreeing in a deposition that each element of claim 1 is

found in combinations of the prior art. *See* Doc. No. 509 at 2, fn. 6, citing to O'Connor deposition, and Exhs. 25 and 26 (filed under seal).

TransCore argues through O'Connor that the '807 Patent is not a combination patent because it uses new and unique elements, citing specifically to the third element of claim 1. O'Connor Decl. O'Connor's cites to this "third element" corresponds to the selective transmission element of claim 1, which was previously defined by O'Connor in deposition testimony. However, O'Connor, in his deposition goes on to identify the "selective transmission" element as part of the Denne '202 reference. Accordingly, O'Connor's assertion that the "third element" of claim 1 is unique and therefore that the '807 Patent is not a combination patent, is disingenuous in light of his previous testimony. Furthermore, O'Connor appears to redefine the separate elements of claim 1, and considers the combination of other elements of claim 1 with the selective transmission to make one "super" element. O'Connor's attempts to redefine the separate elements of Claim 1 are not convincing. Instead, this Court finds that O'Connor's assertions, in addition to being conclusory, are not supported by the record. *See KSR*, 127 S.Ct. at 1745. This Court, therefore, rejects TransCore's assertion, and finds that the '807 Patent is a combination patent, coming under the purview of *KSR.*

### 3. *Graham and KSR Factors*

■ As discussed, the *KSR* Court expressly reiterated the applicability of the *Graham* factors in performing an objective analysis of obviousness for a reviewing court. *See* 127 S.Ct. at 1734. These factors include the determination of:

1. The level of ordinary skill in the pertinent art;

2. The scope and content of the prior art;

3. Differences between the prior art and the claims at issue; and

4. Secondary considerations of non-obviousness, such as commercial success, long felt but unsolved need, failure of others, etc.

The *Graham* Court recognized that although the issue of obviousness is a question of law, the factors that ultimately determine obviousness are "basic factual inquiries" conducted on a case-by case basis. 383 U.S. at 17–18, 86 S.Ct. 684. In addition, *KSR* also recognized other factors for evaluating whether a patent is obvious, including: 1) an "obvious to try" inquiry and common sense; 2) foreseeability of a benefit to upgrade existing systems; and 3) market demand and design incentives.

### a. *Level of Ordinary Skill in the Art*

■ As discussed, the level of ordinary skill in the art is a critical determination in an obviousness analysis. "The importance of resolving the level of ordinary skill in the art lies in the necessity of maintaining objectivity in the obviousness inquiry.... Hence, the level of ordinary skill in the art is a factual question that must be resolved and considered." *Ryko Mfg. Co. v. Nu-Star, Inc.,* 950 F.2d 714, 718 (Fed.Cir. 1991). The parties in *KSR* stipulated to the level of one of ordinary skill in the art, thereby resolving any issues of fact on its own. Similarly, the parties, as evidence by the pleadings and at during oral argument, substantially agree on the level of ordinary skill in the art as including a college degree in electrical engineering, with at least a few years experience in the RFID field. *See* Goldberg Decl. at ¶ 5; O'Connor Decl. at ¶ 26. Accordingly, there is no genuine issue of material fact as to the level of skill of an ordinary artisan.

b. *Claim 1: Scope and Content of the Prior Art/ Differences from the '807 Patent* [3]

██ Plaintiffs assert that the combination of several prior art references render the '807 Patent obvious:

1. Combination of Sterzer references (F. Sterzer, "An Electronic License Plate for Motor Vehicles," RCA REVIEW, vol. 35, 167–175 (June 1974)) and U.S. Patent No. 4,001,-822 and Henoch '82 B.T. Henoch, "Programmable Remote Identification," PROCEEDINGS OF THE INT'L SYMPOSIUM ON AUTOMOTIVE TECHNOLOGY AND AUTOMATION WITH PARTICULAR REFERENCE TO COMPUTER AIDED ENGINEERING AND MANUFACTURING, 481–96 (1982).

2. Combination of Denne '202 (U.S. Patent No. 4,691,202) and Koelle '88 reference (A.R. Koelle "Short Range UHF Telemetry System Using Passive Transponders for Vehicle ID and Status Information", IEEE WORKSHOP ON AUTOMOTIVE APPLICATIONS OF ELECTRONICS, 34–38 (Oct. 19, 1988))

3. The combination of the following references for:

 a. backscatter modulation—Henoch '82, Koelle '88 and Henoch '880

 b. data storage on remote object—Henoch '82 and Chasek '904 (U.S. Patent No. 4,303,904)

 c. selective transmission—Sterzer '74, Sterzer '822 and Denne '202

4. The combination of the references above in light of the "technology ex-plosion" of RFID, and commercial use in factory automation, animal tracking and vehicle tracking in the '80's.

5. The combination of the prior art references above and "a customer request (WABCO) to submit a proposal for a system having a read/write tag for an Italian toll road."

Doc. No. 498, citing to Landt Depo. at 73:10–74:3; 115:11–23.

*i. Sterzer Reference*

In 1974, Sterzer proposed a multi-purpose electronic license plate for use in vehicle technology for use in vehicle tracking, access and toll-road applications. Sterzer '74 reference at abstract. In its summary judgment Order of invalidity, this Court analyzed the scope and content of the Sterzer reference. The Court found, and the parties appear to agree, that the Sterzer reference, which the parties agreed described an "electronic license plate" for vehicle applications, did not disclose backscatter modulation or the data storage element required under Claim 1 of the '807 Patent. Doc. No. 366 at 12–16. Accordingly, the Court finds that the Sterzer reference does not disclose backscatter modulation or the data storage element as required in the '807 Patent claims.

*ii. Sterzer '822*

This Court also analyzed the scope and content of the '822 patent in its summary judgment invalidity Order. *See* Doc. No. 366. The Court in its analysis found that, like the Sterzer reference, the '822 patent did not disclose backscatter modulation or the data storage element required under Claim 1 of the '807 Patent. *See* Doc. No. 366 at 16–20. Plaintiffs dispute, however,

**3.** To the extent this Court has discussed the scope and content of the prior art references cited in its previous summary judgment Order, *see* Doc. No. 366, it is hereby incorporated by reference.

this Court's conclusion in its summary judgment Order that the Sterzer '822 patent does not disclose backscatter modulation. Plaintiffs argue, instead, through Goldberg's declaration, and O'Connor's recent deposition, that the interrogator contains an oscillator that exhibits an RF signal. *Id.* at 9.

In its summary judgment Order, the Court found a genuine issue of material fact because the respective experts disagreed as to whether a second harmonic generated signal, as found in the Sterzer '822 patent, constituted a backscatter modulated system as contemplated by the '807 Patent. *See* Doc. No. 366 at 19. Accordingly, this Court rejects Plaintiffs' arguments, and instead affirms its prior findings that the Sterzer '822 patent discloses all elements except backscatter modulation and data storage capabilities.

### iii. Henoch Reference

In its summary judgment Order, this Court also looked at the scope and content of the Henoch reference. The Court found, and the parties appear to agree, that the Henoch reference, which discloses an radio-frequency identification system for tracking products and components during vehicle assembly, a genuine issue of material fact whether the reference discloses the requirement of selective transmission in the '807 Patent claims. *See* Doc. No. 366 at 20–22.

TransCore, however, also states through the O'Connor declaration, that the Henoch reference could not perform "simultaneous

reception and transmission by the tag" because of the orthogonal polarization technique used. O'Connor Decl. This Court finds that O'Connor's comments are irrelevant because they impermissibly narrow the claims as construed by this Court. The Court has not construed, and TransCore points to no support, that the asserted '807 Patent claims require the simultaneous reception and transmission by the remote object or tag.[4] TransCore's contention that the Henoch '82 reference is now not applicable, or not enabled, is therefore rejected here.

Accordingly, for the reasons above, this Court affirms its previous findings, and holds that the Henoch reference lacks the requirement of selective transmission in the '807 Patent claims.

### iv. Henoch '880 Patent

Although the Court did not review the Henoch '880 patent in its previous summary judgment Order, a review of the patent specification reveals that the Henoch '880 Patent discloses information similar to the Henoch reference. In its motion, Plaintiffs assert that the Henoch '880 patent discloses all the limitations of the '807 Patent, except the selective transmission. Doc. No. 498 at 5. TransCore does not refute this contention, except to add that the Henoch '880 patent could not "achieve[ ] workable simultaneous reception and transmission based on this technique alone." Moreover, Plaintiffs present evidence that supports TransCore's affir-

---

4. The Court notes that TransCore's new construction of the '807 Patent claims goes against its arguments regarding the requirement of a "continuously transmitting" system. This Court in its claim construction rejected Plaintiffs' contention that the remote object would be required to "continuously transmit," and instead could incorporate a wake-up feature or handshake by the interrogator. *See* Doc. No. 211 at 9–12. With a wake-up handshake, the remote object need not continuously transmit, and only transmits when the tag is "woken up" by the interrogator. *Id.* Therefore, with a wake-up handshake, the remote object need not be capable of simultaneously transmitting and receiving signals. TransCore's contention, accordingly, is incorrect in light of the claim construction given by this Court.

mation that the Henoch '880 patent discloses all elements of Claim except selective transmission. *See* Wisnia Decl., Exh. 25 (filed under seal). As discussed, this Court rejects TransCore's arguments requiring the ability of the remote object to simultaneously receive and transmit, and accordingly finds that as with the Henoch '82 reference, the Henoch '880 patent lacks the selective transmission element of the '807 Patent claims.

### v. Denne '202 Patent

The Denne '202 patent was previously analyzed together with the Koelle reference in this Court's summary judgment Order for invalidity. *See* Doc. No. 366 at 25–27. The parties presented several arguments regarding the '202 patent/Koelle combination. In particular, TransCore argued that the '202 patent, which discloses an inductive coupling system, could not be combined with the Koelle reference because it taught away from the use of backscatter modulation. In particular, the '202 patent looks at the problem of multiple transponders (or tags) and the receipt of "corrupted signals" by the interrogator. *See* '202 patent at Abstract. To solve this, the interrogator of the '202 patent "checks" the reply signals by rebroadcasting the signal repeatedly. *See id.*

The Court in its Order agreed that the '202 patent did not disclose backscatter modulation, but did disclose an identification system which used an inductive coupling mechanism to transmit signals from an interrogator to a plurality of transponders in a specific manner, as well as storing data to a remote object. The parties in their respective expert declarations do not to dispute this characterization. *See* O'Connor Decl.; Goldberg Decl. at ¶ 35. Accordingly, the Court finds that the Denne '202 patent lacks the backscatter modulation element of the '807 patent claims.

### vi. Koelle Reference

The Koelle reference, titled "Short Range UHF Telemetry System Using Passive Transponders for Vehicle ID and Status Information" discloses a system that uses backscatter modulation to read and discriminate tags in motion. *See* Abstract. TransCore contends that atlhough the Koelle reference discloses backscatter modulation, it does not disclose a read/write capability of the remote object or tag, nor does it indicate selective transmission by the interrogator. O'Connor Decl. Plaintiffs assert instead that the Koelle reference expressly discusses the benefits of backscatter modulation, as well as the interchangeability of the two types of known RFID systems: inductive coupling and microwave backscatter modulation. Doc. No. 498 at 7–8.

The Koelle reference discloses the use of "high frequency RF signals to remotely read an electronically coded ID or other message from a Tag mounted to the vehicle." *See* Summary. The reference specifically describes a interrogator-tag system using backscatter modulated signals to detect and transfer information from the tag to the interrogator in various applications, including moving vehicles. The reference, however, does not disclose a means of writing information into the tag, nor does it teach selective transmission of information into a tag. Accordingly, this Court finds that the Koelle reference lacks the requirements of selective transmission and the read/write elements of the asserted claims of the '807 Patent.

### vii. Chasek '904 patent

This Court in its previous summary judgment Order did not address the Chasek '904 patent. A review of the '904 patent, titled "Universally applicable in-motion and automatic toll paying system using microwaves" discloses a toll collec-

tion system that stores a toll balance on a transponder or remote tag. *See* '904 patent at Abstract. The system does this by storing on the remote tag a toll balance. When the transponder passes through an interrogator field, the interrogator queries the transponder to determine the balance, subtracts the toll amount from the balance, and retransmits the balance to the transponder. *See id.* The '904 patent, therefore teaches a read/write system, but does not use RF backscatter modulation nor does it teach selective transmission. Accordingly, the '904 system lacks the elements of backscatter modulation and selective transmission claimed in the '807 Patent.

c. *Claim 1: Henoch Reference Combined with Sterzer Reference, Further in View of Koelle '88 Reference and Denne '202 Patent*

Plaintiffs first contend that one of ordinary skill in the art "would have seen the benefit of upgrading the Henoch system with selective transmission." Doc. No. 498 at 4. Plaintiffs assert that the Henoch '82 reference describes the PREMID RFID system, which uses remote objects "on cars during automated assembly lines production and interrogators located at assembly stations." *Id.* at 5. Plaintiffs claim that one of ordinary "skill in the art in 1990 would readily have seen the benefits of upgrading Henoch's PREMID system to include the selective transmission of Sterzer." *Id.* Plaintiffs also look to the Koelle '88 reference as providing the desirability to selectively identify vehicles through Koelle's "cradle-to-grave" reference:

A built-in Tag on a motor vehicle could serve multiple purposes during the life cycle of the vehicle. The vehicle could be given a *"cradle-to-grave" identity code* to serve many purposes during the vehicle's lifetime... The Tag could be used during the manufacturing cycle, during the distribution and sales phase and during the warranty period. The vehicle owner could also use the Tag for entry into automatic access systems such as parking lots and toll facilities.

*Id.,* citing to Koelle '88 reference at 38 (emphasis added). Plaintiffs assert that the combination of Koelle '88 with the Sterzer and Henoch references gives reason to "form a single 'cradle-to-grave' system." Doc. No. 509 at 2.

TransCore in response first contends generally that Goldberg's obviousness under *KSR* is incorrect because it does not conduct a secondary consideration analysis, and does not identify "real world" factors, including "market need, market pressure, and a finite number of predictable solutions." Opp. at 6. TransCore also asserts that the upgrading of Henoch '82 or the '880 patent, or the specific combinations of the Henoch references with the Sterzer references of '822 patent, together with Denne '202 or the Koelle '88 reference would not render the '807 Patent obvious. O'Connor Decl. First, O'Connor contends, as discussed, that because the Henoch '82 reference and '880 patent do not "enable the implementation of simultaneous transmission and reception in backscatter system," there would be no motivation to upgrade the Henoch references, or combine Henoch with the other references or patents to provide the claimed invention of the '807 Patent. *Id.* O'Connor next opines that combining Sterzer with any reference would not "create any reasonable expectation of success in their implementation." *Id.* O'Connor repeats this contention that the combination would not "create any reasonable expectation of success in their implementation" for the combination of the Denne '202 patent. *Id.* O'Connor also states that the inductive coupling mechanism of the '202 patent would make it incompatible with references or patents that disclose backscatter

modulation, and therefore one of ordinary skill in the art would not be motivated to combine the references. *Id.* O'Connor also repeats his arguments with the Koelle '88 reference, stating that because the reference fails to disclose a read/write tag and does not disclose selective transmission, it cannot provide a motivation to "upgrade" any of the Henoch system.

### i. Simultaneous Reception/Transmission in Henoch '82 or '880 Patent

TransCore next contends that the Henoch '82 and '880 patent is irrelevant because the remote object cannot perform simultaneous reception and transmission as allegedly required by the '807 Patent. As discussed, this Court rejects any suggestion by TransCore that the Henoch '82 reference or the '880 patent is inapplicable because it cannot perform simultaneous reception and transmission by the remote object or tag. An invalidity analysis requires a two-step approach: 1) construction of the asserted claims; and 2) application of the prior art elements to the constructed claims. *Oakley,* 316 F.3d at 1339. TransCore here fails to support any requirement in the claims that the remote object be capable of simultaneous transmission and reception of an RF signal by the interrogator. The Court, therefore, rejects TransCore's assertion regarding the inability of the Henoch '82 reference or '880 patent to simultaneously transmit and receive as irrelevant.

The Court, therefore, must determine whether the Henoch '82 reference, which lacks the selective transmission element of the asserted claims, could be combined with the Sterzer reference or patent, and/or the Koelle reference and/or Denne '202 patent.

### ii. Denne '202 Combinations

In regards to combinations with the Denne '202 patent, the Court first finds that there is a genuine issue of material fact whether one of ordinary skill in the art would combine the Denne '202 patent with any other RFID reference to make the invention claimed in the '807 Patent. As discussed in its first summary judgment of invalidity Order, this Court rejected Plaintiffs' argument that the Denne '202 patent could be combined with an RF/backscatter modulation reference. Doc. No. 366 at 25–28. The Court found specifically that a genuine issue of material fact remained whether the Denne '202 patent's inductive coupling mechanism and the requirement by the '202 patent of repeated checks and simultaneous tag/interrogator communication in order to ensure selective transmission could be accomplished with an RFID backscatter modulation system. *Id.* at 27 ("[T]he '202 patent teaches that the system's integrity is dependent upon the interrogator's ability to query the transponder repeatedly."). The '202 patent, therefore, solves the problem of selective transmission by using the repeated interrogation process, a technique that cannot be accomplished in a backscatter modulation system. Accordingly, under *KSR* a genuine issue of material fact remains whether one of ordinary skill in the art viewing the Denne '202 patent would look to a backscatter modulation system because doing so would not improve the system—it would in fact take away the ability of the '202 patent to perform selective transmission. Conversely, a genuine issue of material fact also remains whether one of ordinary skill in the art viewing the Henoch '82 reference or '880 patent would look to the Denne '202 patent's inductive coupling mechanism as a means for selective transmission because doing so would not improve the system, again teaching away from the Henoch '82 reference or '880 patent's backscatter modulation system. The Court, therefore rejects Plaintiffs' contentions that the '202 patent in combination with RFID refer-

ences would render obvious the asserted claims of the '807 Patent.

### iii. Henoch References in Combination with Sterzer References

Plaintiffs next contend that the Henoch '82 reference or '880 patent, combined with the Sterzer reference or '822 patent, render obvious the Claim 1 of the '807 Patent. Doc. No. 498 at 6. Plaintiffs furthermore assert that the inclusion of the Koelle '82 reference gives guidance to the usefulness of an "identity code" in creating a "cradle-to-grave" system to identify a vehicle throughout its manufacturing and later consumer use life span. *Id.* at 5. Plaintiffs also allege that the market pressure at the time of the '807 Patent filing would have demanded a read/write system, and point to testimony by inventor Landt that the inventors responded to customer demand to have a read/write system. Doc. No. 498 at 6, citing to Landt Depo. at 117:14–118:24 and Koelle Depo. at 27:10–22. Plaintiffs, citing to deposition testimony by inventors Landt and Koelle, also claim that although the Henoch reference's PREMID system met the customer demands for the read/write system, it had known design difficulties of non-selectively writing into other remote objects or tags. *Id.* Plaintiffs point to deposition testimony that the inventors used a tag with a unique identification to solve the problems with the PREMID system, which Plaintiffs assert is the same system found in the Sterzer references. *Id.*

In response, TransCore contends that the combination of the Sterzer, Henoch and Koelle references would not render the '807 Patent obvious. O'Connor Decl. O'Connor first asserts that the Sterzer reference and patent does not disclose a selective transmission requirement. *Id.* As discussed, the Court rejects this assertion in light of its first invalidity summary judgment Order, which explicitly found that the Sterzer reference selectively transmits to an identified remote object, citing to a passage in the Sterzer reference that states that "messages could also be addressed to certain vehicles or groups of vehicles based on their identifying number." The Sterzer reference, as well as the Sterzer '822 patent, *see* Doc. No. 366 at 16–17, therefore discloses the selective transmission element required in the asserted claims of the '807 Patent.

TransCore also alleges that the combination of the Sterzer, Henoch and Koelle references do not "provide enough information to create any reasonable expectation of success in their implementation." O'Connor Decl. O'Connor, however, points to no examples or references that speak to the alleged unreasonable expectation of success that O'Connor concludes will occur. Without specific examples of the references in combination creating a device without any reasonable expectation of success, this Court disregards O'Connor's statement as conclusory. *See KSR,* 127 S.Ct. at 1746 (dismissing "conclusory affidavit" where obviousness determination is ultimately a matter of law).

This Court, instead, viewing the entire record in this case, finds persuasive Plaintiffs' arguments regarding the combination of the Sterzer, Henoch and Koelle references, and that the combination of these references provide clear and convincing evidence of the obviousness of Claim 1. As discussed, the Henoch references discloses each element of claim 1 of the '807 patent, save the selective transmission element. Accordingly, the Henoch reference, which discusses the PREMID vehicle tracking system, and the '880 patent, disclosed a backscatter modulation system that could read and write to a remote object, or tag. The Henoch reference, however, was known to possess problems of writing information to non-specific tags. *See* O'Con-

nor Depo. at 20:292–15–293:5; Landt Depo. at 117:14–118:24. In *KSR*, the Supreme Court looked at several ways to render a patent obvious, including by "noting that there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims." 127 S.Ct. at 1742.

Here, the solution would be the unique key identifier disclosed in the Sterzer reference and '822 patent. The '822 patent, titled "Electronic license plate for motor vehicles," and issued on January 4, 1977, "provides for a relatively simple means for communicating with a particular interrogated vehicle from an interrogating station." '822 patent at 8:29–31. The '822 patent specification, thus, discloses a system that uses a unique vehicle identification number assigned to each vehicle license plate, or tag. *See* '822 patent at 7:41–42. The system of the '822 patent, for example, "can be programmed to send a particular code message to a single specified vehicle or any specified group of vehicles" through the identification number of the tag. *Id.* at 8:39–42. It appears, therefore, that the unique ID code solution of the '822 patent can be used to solve the known selective transmission problem with the Henoch '82 reference to produce the claimed invention of the '807 Patent.

■ In response, TransCore provides a declaration from inventor Landt contesting that there was a "known problem" with the Henoch PREMID system. *See* Landt Decl. (filed under seal). Landt asserts that the PREMID system was not meant to "distinguish groups and handle multiple tags identically." *Id.* Instead, Landt alleges that the PREMID technology was implemented "to differentiate between individual tags one at a time" for such applications as an automobile assembly-line manufacturing. *Id.* In his deposition testimony, Landt responds to direct questions regarding problems with the

PREMID products, and affirms that the PREMID products had the known problem of writing data into the wrong tag or remote object. Wisnia Decl., Exh. 29 (filed under seal). Accordingly, the testimony given by Landt directly supports the existence of a known problem in the field of writing to non-specific tags, and contradicts his sworn declaration. In the Ninth Circuit, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). This Court is not precluded from finding no genuine issue of material fact where deposition testimony clearly contradicts a declaration. In addition, the Court also finds support for known problems with the Henoch '82 reference and '880 patent from deposition testimony by O'Connor. *See* Doc. No. 498 at 6, fn. 8. From the record, therefore, this Court rejects TransCore's assertion that there was no known problem regarding the Henoch '82 reference or '880 patent.

That a reason existed to combine the Henoch and Sterzer references, however, is also bolstered, by language in the Koelle reference that provided market suggestions or design incentives regarding the implementation of a selective identification system for use in automotive tracking purposes. As discussed in *KSR*, "[w]hen a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it . . . If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability." 127 S.Ct. at 1740. Here, the Koelle reference, which also discloses automotive applications, suggests the improved marketability of a vehicle identification system that gives "a 'cradle-to-grave' identity code." Koelle '88 reference at 38.

A built-in Tag on a motor vehicle could serve multiple purposes during the life cycle of the vehicle. The vehicle could

be given a *"cradle-to-grave" identity code* to serve many purposes during the vehicle's lifetime... The Tag could be used during the manufacturing cycle, during the distribution and sales phase and during the warranty period. The vehicle owner could also use the Tag for entry into automatic access systems such as parking lots and toll facilities. *Id.* (emphasis in text). Accordingly, the Koelle reference suggests design changes that could enhance the marketability of an improved device, and thereby provides the suggestion by which one of ordinary skill in the art would be guided to combine the Sterzer and Henoch prior art references.

■ Landt also states in his declaration that the Henoch system does not provide the use of unique ID tags with " 'hidden node' issue," as contemplated by the '807 Patent. Landt Decl. Landt claims that the "concept of preventing accidental overwrites in a robust read/write modulated backscatter RFID system is one of the difficult problems to be solved in providing such a system." *Id.* Landt further asserts that although the implementation of a unique key code was elegant, but not complex, the solution was not simplistic and itself required a complex and elegant circuit design. *Id.* These assertions by Landt are irrelevant to this analysis. First, whether or not a solution is complex or simple is irrelevant in an obviousness analysis in light of the statutory admonition that "[p]atentability shall not be negatived by the manner in which the invention was made." 35 U.S.C. § 103(a); *In re Saether*, 492 F.2d 849, 854 (Cust. & Pat. App.1974) (an obviousness analysis not concerned with "how [an invention] was achieved."). In addition, whether the '807 Patent claims require that a system must be robust enough to overcome a "hidden node issue" is a claim construction issue. The Court has not required that the claims encompass a system that is robust. To the contrary, the claims as construed go

against such a finding since it encompasses not only "continuously scrolling" systems, which as discussed in the '807 Patent specification makes the system robust, but also less-robust non-continuously scrolling systems. *See* Markman Order at 10–12.

■ Moreover, even if this Court finds that a robust system is needed, the parties agree here on the level of ordinary skill in the art to be a "higher level" of skill. "Where the level of skill is high, one may assume a keener appreciation of nuances taught by the prior art." *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1352 (Fed.Cir.2001). Although Landt states that the Henoch system could not be used with some unique ID tags because of an alleged "hidden node" issue, the problem of finding a unique key code identifier that will work with the Henoch system, which Landt affirms is a simple, yet elegant solution, can be overcome by a highly skilled person in the art. "If a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle", *KSR*, 127 S.Ct. at 1742, certainly persons possessing higher levels of skill are expected to do so.

Accordingly, this Court rejects Trans-Core's contentions through Landt that the Henoch system is irrelevant as not being sufficiently robust.

*iv. Conclusion*

As stated in *KSR*, this Court in an obviousness analysis must look to:

[I]nterrelated teachings of multiple patents; the effect of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.

127 S.Ct. at 1740–41. A review of the records presents to this Court that, in addition to the *Graham* factors and analysis, many of the new factors elucidated in *KSR* are met with the combination of the Sterzer reference and '822 patent, the Henoch '82 reference or '880 patent and the Koelle '88 reference. One of ordinary skill in the art, with a minimum of a bachelor's degree in electrical engineering and experience in the RFID communications field, would have looked and had knowledge of all three references, which deal specifically with identification and communication in the tracking field. A person of ordinary skill in the art, as the inventors are and as TransCore's expert is, would have known of the problems present in the art, particularly that the commercial PREMID system of the Henoch '82 reference wrote information to non-specific tags, a piece of prior art that was "ready for the improvement." *KSR*, 127 S.Ct. at 1740. Furthermore, the Koelle '88 reference would have also provided a design incentive to go beyond the current configurations to develop a system capable of bringing a product from "cradle-to-grave" with a unique vehicle identification system. Finally, the combination of the references is not "more than the predictable use of prior art elements according to their established functions." *Id.* Combining a unique ID tag with the Henoch '82 and '880 patent would predictably allow specific addressing capabilities that was lacking in the Henoch prior art references. Accordingly, the Court finds that Plaintiffs have met their burden of clear and convincing evidence that the combination of Henoch '82 or '880 patent, the Sterzer reference and '880 patent, and the Koelle '88 reference renders Claim 1 of the '807 Patent obvious.[5]

**5.** Because this Court finds that the combination of Sterzer and Henoch, in view of Koelle '88, renders the '807 Patent obvious, it will not reach the other combinations of Ster-

### d. *Secondary Considerations*

 Under *Graham*, the Supreme Court set forth the relevance of secondary considerations, including "commercial success, long felt but unsolved needs, failure of others, etc. [that] might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." 383 U.S. at 17–18, 86 S.Ct. 684. Evidence of secondary considerations of nonobviousness "may rebut a prima facie showing of obviousness." *Ormco Corp. v. Align Technology, Inc.*, 463 F.3d 1299, 1311 (Fed.Cir.2006).

The Court first notes that TransCore arguments regarding secondary considerations of nonobviousness does not stand out in its pleadings. Instead, TransCore only mentions in passing, in conjunction with its discussion on the errors of Goldberg's report, how Goldberg failed to discuss "secondary considerations." This passing reference refers to footnote 5, which in turn refers to the declaration of George McGraw regarding the "significant monetary value placed on the '807 patent in the 'real world' RFID marketplace," as well as a declaration by inventor Landt. Opp. at 4, fn. 5. TransCore's discussion, therefore, borders on forcing this Court to "dig" through the exhibits to find its arguments regarding secondary considerations of nonobviousness. *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996), quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995) (" 'It is not ... the district court['s task], to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.' ").

zer, Chasek '904 patent and Koelle '88, and Denne '202 patent with Koelle '88 reference. Doc. No. 509 at 2.

Plaintiffs assert that TransCore impermissibly inserts a new commercial success argument which is not "tied to the *KSR* decision and should be disregarded as untimely; TransCore should have submitted the McGraw and Landt declarations in response to the original summary judgment motion." Doc. No. 509 at 4. Plaintiffs also contend that the declarations are still deficient because it provides no nexus between the '807 Patent and the alleged commercial success. *Id.*

■ Commercial success as evidence of secondary considerations of nonobviousness "is only significant if there is a nexus between the claimed invention and the commercial success." *Ormco*, 463, F.3d at 1312. The commercial success must be attributed to the invention as " 'disclosed and claimed in the patent.' " *Id.*, quoting *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed.Cir.1997). Conversely, any commercial success evidence would be irrelevant if "the commercial success is due to an unclaimed feature of the device." *Id.* Accordingly, a nexus will be shown only if the commercial success can be traced and attributed to the claimed invention.

The declarations provided by McGraw and Landt state that several commercial products have generated extensive sales revenues. McGraw Decl. In addition, TransCore cites to royalty payments under the licensing agreement that are attributed to the '807 Patent. *Id.* In response, Plaintiffs rebut TransCore's contentions, stating that TransCore still fails to show proper nexus between the claimed commercial success and the '807 Patent, and the royalty payments are incorrect because under the CLA, TransCore has a "royalty free, fully paid up license." Doc. No. 509 at 4 (emphasis omitted).

A review of the licensing agreement supports Plaintiffs' contention. The licensing agreement explicitly states that "Trans-

Core and its affiliates" are granted "a paid up, royalty free ... exclusive worldwide license...." Moreover, TransCore fails to address that the licensing agreement covers not only the '807 Patent, but numerous other patent families as well. Accordingly, TransCore's argument lacks merit.

In addition, the McGraw declaration does not support that the products cited embody only the claimed features of the '807 Patent. Instead, the declaration only asserts that the product families encompass as a key feature the invention claimed in the '807 Patent. McGraw Decl. TransCore, therefore, still fails to show that the alleged commercial success is attributable solely to the '807 Patent, only that the '807 patent represents a key feature. This implies, at best, that only a percentage of the commercial success claimed can be attributed to the '807 Patent.

Moreover, even if this Court were to consider the '807 Patent commercially successful, commercial success is only one component of secondary considerations of nonobviousness. In the absence of other considerations, this Court finds that the commercial success shown is insufficient to rebut the prima facie case of obviousness shown here. *See Leapfrog Enterprises, Inc. v. Fisher–Price, Inc.*, 485 F.3d 1157, 1162 (Fed.Cir.2007) (evidence of substantial commercial success, praise and long-felt need not sufficient to rebut strong prima facie showing of obviousness).

Accordingly, for the reasons stated above, the Court rejects TransCore's assertions that secondary considerations rebut the showing of obviousness of Claim 1 of the '807 Patent.

e. *Claims 4–6: Additional Prior Art Combinations*

■ Plaintiffs also assert that Claims 4–6 are rendered obvious by combinations

in the prior art. Claims 4–6 add additional elements to Claim 1, including in Claim 4 the "ability or inability [of the remote object] to receive and store transmitted data from said interrogator." '807 Patent at 10:19–20. Claims 5 and 6, which are dependent on independent Claim 4, add on the elements of "said remote object indicating to said interrogator its ability to receive and store transmitted data by the existence of writable semiconductor memory within said object" (Claim 5) and "said remote object determining its ability to receive and store transmitted data by sensing the strength of the received RF signal and determining whether or not it is adequate for data accurately to be written into said remote object, and indicating this ability to said interrogator" (Claim 6). *Id.* at 10:37–48.

Plaintiffs contend that the combination of Sterzer, Henoch and Koelle, in further view of four additional references, render Claims 4–6 of the '807 obvious. The additional references include:

1. Terry L. Fox, "AX.25 Amateur Packet–Radio Link–Layer Protocol, v. 2.0" (October 1984)
2. David W. Borden, "Data Communications" (February 1982)
3. Barry D. McLarnon, "HF Packet: Where do we go from here?" (August 20, 1987)
4. Paul L. Rinaldo, "Introducing the Packet Adaptive Modem" (1983)

TransCore contends that the combination of the additional four references is not appropriate because the references are non-analogous art that would not be considered by one of ordinary skill in the art in the RFID field. *See* O'Connor Decl. TransCore asserts that the references, which address communication problems in the amateur radio 2–way radio frequency data communications field, are unrelated because they do not contain information or technology related to RFID systems.

Plaintiffs disagree, asserting instead that one of ordinary skill in the art in the RFID field would have reason to look toward amateur radio communications art because "[t]he amateur radio community was exploring the world of two-way RF digital data communication in the '80s, as were designers of RFID systems." Goldberg Decl. at ¶ 65. Plaintiffs also discuss similar problems between RFID and digital amateur radio communications, and that companies such as RCA and Philips worked in manufacturing both RFID and equipment for amateur radio operators and shortwave listeners. *Id.*

Even if the references disclose a means for a remote object equivalent in an amateur radio context to communicate to an interrogator-equivalent its ability or inability to write information to the remote object, the Court must first reach the threshold question of whether the prior art references would be reviewed by one of ordinary skill in the art. The experts here disagree as to whether the amateur radio references are analogous art. *See* O'Connor and Golderg Decl. Both experts present reasoned arguments why the cited art is analogous, or conversely non-analogous, outlining the prior art references and why the information contained would or would not motivate one of skill in the art to look to the field of amateur radio for solutions.

Moreover, the contribution that Plaintiffs seek to link to the amateur radio references differ from that contemplated in *KSR*. In *KSR*, the Supreme Court recognized that known problems in the field provides sufficient reason for one of ordinary skill in the art to look at solutions in other art, including art in other fields. 127 S.Ct. at 1742. In contrast, Plaintiff here asserts that known problems in the amateur radio digital communication field would have motivated an ordinary artisan

to combine elements from the amateur radio field with RFID technology. Goldberg Decl. at ¶¶ 65–66. This reasoning is not supported in *KSR* as a sufficient basis for finding obviousness.

Accordingly, the Court finds a genuine issue of material fact in regards to whether the combination of references are analogous art, and therefore DENIES summary judgment as to Claims 4–6 of the '807 Patent.

### CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. TransCore's motion to strike the Goldberg declaration (Doc. No. 499) is **DENIED**.

2. Plaintiffs' motion for summary judgment of invalidity (Doc. No. 497) is **GRANTED IN PART and DENIED IN PART**. The motion for summary judgment of invalidity is **GRANTED** as to Claim 1 of the '807 Patent, and **DENIED** as to Claims 4–6 of the '807 Patent.

**IT IS SO ORDERED.**